**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS**

| | |
|---|---|
| Laura Hite, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>      - against -<br><br>Unilever United States, Inc.,<br><br>                Defendant | 7:22-cv-02188<br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Unilever United States, Inc. ("Defendant") manufactures, labels, markets, and sells mayonnaise dressing promoted as being made "With Olive Oil," under the Hellmann's brand (the "Product").



## I.   MAYONNAISE

2.      Mayonnaise or "mayo," is a thick, creamy sauce commonly used on sandwiches and composed salads, and is the base for other sauces, such as tartar sauce and Russian dressing.

3.      Mayonnaise and its reduced-fat variations are defined by a standard of identity as an emulsion of vegetable oils, eggs, and acids

4.      Vegetable oil traditionally refers to cooking oils such as corn oil, canola oil, palm oil, safflower oil, sesame oil, soybean oil and sunflower oil.

5.      Consumer demand for mayonnaise has declined over the past twenty years for various reasons.

6.      First, mayonnaise is considered an ultraprocessed food ("UPF"), frowned upon by nutrition authorities.

7.      Second, while mayonnaise used to be made with limited, natural ingredients, such as eggs, fresh salad oils, vinegars and seasonings, today is mostly vegetable oils and water, a small amount of eggs, with numerous additives, synthetic preservatives, and added salt, as shown below.



8.      Third, there is a perception that mayonnaise is used to conceal flaws in the foods to which it is applied.

9.      Fourth, a larger percentage of society follows dietary preferences which exclude eggs, for reasons related to health, animal welfare, and environmental impact.

10.     Fifth, the traditional vegetable oils used in mayonnaise are recognized as containing harmful amounts and types of fat.

11.     Sixth, the variety of condiments has increased significantly in the past 70 years.

12.     Whereas consumers once chose from mayonnaise, ketchup, and mustard, today they can choose from dozens including salsa, hummus, kimchi, wasabi, and guacamole.

13.     These condiments are typically served fresh, contain healthy ingredients, and appeal to consumers seeking to avoid heavily processed foods.

## II.    CONSUMER DEMAND FOR OLIVE OIL

14.     Most vegetable oils are highly processed using chemicals, which reduces their nutritional value to make them palatable.

15.     Olive oil is the juice of crushed olives without additives or harsh processing.

16.     Whereas vegetable oils have no flavor or aroma, olive oil is known for its peppery and grassy taste.

17.     Over the past several decades, olive oil has increased in popularity and its sales now exceed all other vegetable oils combined.

18.     The popularity of olive oil has been helped by its association with the Mediterranean Diet, confirmed by scientific studies showing it reduces health risks.

19.     Olive oil has high levels of heart-healthy fats, such as polyunsaturated and monounsaturated fat, which help control cholesterol

20.    Olive oil contains antioxidants, which promote immunity, and fight free radical damage to help slow down the aging process.

21.    Olive oil promotes brain function, bone strength, and balanced blood sugar.

22.    The oleic acid and phenols in olive oil is linked to prevention of skin, breast and colon cancer.

### III.   PRODUCT REPRESENTED AS MADE "WITH OLIVE OIL" MISLEADING

23.    Defendant markets the Product to the increasing numbers of Americans seeking to consume traditional foods but with ingredients known for providing health benefits, like olive oil.

24.    By labeling the Product as made "With Olive Oil," with pictures of two olives and leaves on branches, and green packaging, consumers expect it contains a significant, non-de minimis amount of olive oil, in relative and absolute amounts to all oils used.

25.    However, the ingredient list reveals a smaller than expected amount of olive oil, in absolute and relative terms, and that the most predominant oil is "Soybean Oil."



**INGREDIENTS:** WATER, SOYBEAN OIL, OLIVE OIL, WHOLE EGGS AND EGG YOLKS, MODIFIED POTATO STARCH, SUGAR, DISTILLED VINEGAR, SALT, LEMON JUICE CONCENTRATE, SORBIC ACID AND CALCIUM DISODIUM EDTA (USED TO PROTECT QUALITY), NATURAL FLAVOR, PAPRIKA EXTRACT.

26.    The relative and absolute amount of olive oil is *de minimis* and is insufficient to

confer any of the health benefits associated with olive oil.

## IV.   CONCLUSION

27.   Defendant makes other representations and omissions with respect to the Product which are false or misleading.

28.   Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

29.   The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

30.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

31.   Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

32.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $3.99 for 30 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

33.   Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

34.   The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

35.   Plaintiff Laura Hite is a citizen of New York.

36.    Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in Sylvan, Bergen County, New Jersey.

37.    The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

38.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

39.    The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

40.    Venue is in White Plains in this District because a substantial part of the events or omissions giving rise to these claims occurred in Westchester County, i.e., Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

<u>Parties</u>

41.    Plaintiff Laura Hite is a citizen of Yonkers, Westchester County, New York.

42.    Defendant Unilever United States, Inc. is a Delaware corporation with a principal place of business in Sylvan, New Jersey, Bergen County.

43.    Though owned by Defendant, the Hellmann's brand was founded in 1903 by Richard Hellmann, a Prussian immigrant to New York.

44.    Based on foods from his homeland, Hellmann mixed eggs, oils, and acidulants and called it "Hellmann's Blue Ribbon Mayonnaise."

45.    Hellmann's mayonnaise was immensely popular, and he continually expanded

production to meet demand.

46.    Hellmann's is known as the gold standard for mayonnaise, equivalent to Heinz for ketchup or Kleenex for tissues.

47.    Consumers choose Hellmann's because of its reputation and history of quality ingredients.

48.    For more than a hundred years, Hellmann's has established a reservoir of trust from consumers.

49.     Products under the Hellmann's brand have an industry-wide reputation for quality and value.

50.    The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

51.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including ShopRite, at locations including 25-43 Prospect St, Yonkers, NY 10701 between March 6, 2022 and March 13, 2022, and/or among other times.

52.    Plaintiff believed the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

53.    Plaintiff bought the Product because she expected it was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits because that is what the representations said and implied.

54.     Plaintiff relied on the words, coloring, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, and/or claims made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

55.     Plaintiff was disappointed because she believed the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

56.     Plaintiff bought the Product at or exceeding the above-referenced price.

57.     Plaintiff would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it.

58.     Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

59.     The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

60.     Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

61.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar mayonnaise and its reduced fat variations with added healthy ingredients, because she is unsure whether those representations are truthful.

## Class Allegations

62.   Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, Iowa, Utah, and Montana who purchased the Product during the statutes of limitations for each cause of action alleged.

63.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

64.   Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

65.   Plaintiff is an adequate representative because her interests do not conflict with other members.

66.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

67.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

68.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

69.   Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York General Business Law ("GBL") §§ 349 & 350

### (Consumer Protection Statute)

70.   Plaintiff incorporates by reference all preceding paragraphs.

71.   Plaintiff and class members desired to purchase a product that was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

72.   Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

73.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

74.   Plaintiff relied on the representations that the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

75.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

76.   The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

77.   The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

78.   Defendant intended that each of the members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

79.     As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

80.     Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breach of Contract</u>

81.     Plaintiff entered into a contract with Defendant for purchase of the Product.

82.     The terms of the contract provided that the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

83.     Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

84.     Plaintiff was damaged by the breach, and those damages include the purchase price.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

85.     The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

86.     Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

87.     Defendant knew the product attributes that potential customers like Plaintiff were

seeking and developed its marketing and labeling to directly meet those needs and desires.

88.   Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

89.   Defendant's representations affirmed and promised that the Product was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

90.   Defendant described the Product as one which was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

91.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

92.   This duty is based on Defendant's outsized role in the market for this type of Product, a trusted brand known for the highest quality products.

93.   Plaintiff recently became aware of Defendant's breach of the Product's warranties.

94.   Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

95.   Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

96.   Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices,

and by consumers through online forums.

97.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

98.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

99.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected it was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits, and she relied on Defendant's skill and judgment to select or furnish such a suitable product.

100.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

101.    Defendant had a duty to truthfully represent the Product, which it breached.

102.    This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand known for the highest quality products.

103.    Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

104.   These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

105.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

106.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

107.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

108.   Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was made with a significant and/or predominant amount of olive oil, which was desired to provide health benefits, as opposed to containing mainly soybean oil, which lacked these benefits.

109.   Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

110.   Defendant knew of the issues described here yet did not address them.

111.   Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

112.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

　**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   March 16, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com